IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CATHY ARNOLD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 05-0607-CV-W-HFS |
| ) | |
| ADT SECURITY SERVICES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Plaintiffs' second amended complaint, filed on behalf of eight plaintiffs, alleges claims under 42 U.S.C. § 1981 for a pattern and practice of race discrimination and for a hostile work environment, against defendants ADT Security Services, Inc., Dinesh Chand and Tyco Fire (NV) Inc. ADT and Chand have filed a motion for summary judgment as to the claims of plaintiff Cathy Arnold. Defendants[1] argue that because Arnold failed to disclose this case as an asset in her bankruptcy filings, the court should dismiss her claims on judicial estoppel grounds. For the reasons discussed below, defendants' motion will be denied.

**I.    Background**

Plaintiff Cathy Arnold began working for ADT Security Services, Inc. as a team manager in February 4, 1998. Defs.' Answer to Second Amd. Compl. ¶ 20. Arnold's employment with ADT was terminated on November 27, 2001. Defs.' Ex. 2. Arnold alleges that during her employment with ADT, she "was subjected to discriminatory terms and conditions and a hostile work

---

[1]For purposes of this order, the court will refer to ADT Security Services, Inc. and Dinesh Chand collectively as "defendants." The other defendant, Tyco Fire (NV) Inc., does not appear to have been served and has not entered an appearance in this case.

environment." Defs.' Ex. 1, Second Amd. Compl. ¶ 22. During the summer of 2002, Arnold first approached her current attorney, Elle Sullivant, regarding allegations of race discrimination and harassment against ADT. Defs.' Ex. 11, Depo. of Cathy Arnold 253:15-17.

On May 5, 2003, Arnold filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Missouri, Case No. 03-42786-jwv13.[2] Defs.' Ex. 3. Schedule B to her bankruptcy petition, filed May 21, 2003, required her to list all of her personal property. Under the Schedule B category titled "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Arnold checked the box for "None." Defs.' Ex. 4. She did not list any employment-related claims against defendants anywhere within Schedule B. Id. In her Statement of Financial Affairs, filed May 21, 2003, Arnold was required to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Defs.' Ex. 6. Her response was "None." Id. Arnold also signed declarations, under penalty of perjury, that her Schedules and Statement of Financial Affairs were "true and correct." Defs.' Ex. 5; Doc. 7 in Bankr. case.

On June 27, 2003, Arnold filed her Amended Chapter 13 Plan. Doc. 19 in Bankr. case. Under the Plan, Arnold would repay 100 percent of her debts owed to secured and unsecured creditors who filed claims that were allowed, via monthly payments of $714.77 to the Trustee. Id. The Bankruptcy Court confirmed the Amended Chapter 13 Plan on September 15, 2003. Docs. 21 and 22 in Bankr. Case. On November 29, 2004, Arnold filed a Third Amended Chapter 13 Plan,

---

[2]The court takes judicial notice of the pleadings in Arnold's bankruptcy case, several of which are attached as exhibits in the parties' briefing. See Stutzka v. McCarville, 420 F.3d 757, 760-61 n.2 (8th Cir. 2005).

which increased her monthly payment to $850.00. Doc. 47 in Bankr. case. That Plan was confirmed by the Bankruptcy Court on December 3, 2004. Docs. 51 and 54 in Bankr. case.

On July 7, 2005, Arnold and another plaintiff, Cynthia Braxton, filed this employment discrimination case against defendants. On February 28, 2006, Arnold filed a motion in the Bankruptcy Court to pay off her Chapter 13 Plan. Doc. 68 in Bankr. case. The motion stated that "Debtor would like to payoff her Plan at 100%" and that "[t]he funds for Debtor's payoff would be derived from refinancing of her residence." Id. The motion was granted on March 16, 2006. Doc. 72 in Bankr. case. In response to a request for production of documents by defendants in the present case, on March 24, 2006, Arnold's attorney provided defendants with a copy of Arnold's bankruptcy petition and associated schedules.

On August 7, 2006, the Trustee filed his Final Report and Account, which stated that Arnold's case was completed on May 11, 2006 (following the refinancing and Plan pay off). Doc. 81 in Bankr. case. The Final Report and Account reflects that all filed and allowed claims were repaid 100 percent and that no balance was due to any creditor. Id. On August 8, 2006, the Bankruptcy Court approved the Trustee's Final Report and Account, and discharged Arnold "from the debts and liabilities provided for by the Chapter 13 plan." Defs.' Ex. 8; Docs. 83 and 84 in Bankr. case. Arnold never filed an amended Schedule B, Statement of Financial Affairs, or any other Schedule or document with the Bankruptcy Court disclosing the existence of her claims or this lawsuit against defendants. Defs.' Ex. 9.

Meanwhile, on July 19, 2006, Arnold, along with several other plaintiffs, filed another lawsuit against defendants in the Circuit Court for Jackson County, Missouri, alleging various claims arising out of their employment. Defs.' Ex. 10. Arnold never disclosed the state court suit

3

or the existence of the claims it contains to the Bankruptcy Court by way of amending her Schedule B, Statement of Financial Affairs, or any other Schedule or document. Defs.' Ex. 9.

Subsequently, defendants filed the present motion, seeking dismissal on judicial estoppel grounds based on Arnold's failure to disclose this case to the Bankruptcy Court. Arnold asserts that the failure to amend her filings to disclose this case in her bankruptcy case was inadvertent and unintentional. In an affidavit, she states that after securing bankruptcy counsel in early 2003, she was asked to complete a Schedule B, which asked her to list all "contingent and unliquidated claims," but those terms were never explained to her by bankruptcy counsel. Plf.'s Ex. A at ¶¶ 1-2. She states that, at the time she filed her bankruptcy petition, Schedule B and Statement of Financial Affairs, "I did not (and never did) become a party to any administrative proceeding, was not a party to any lawsuit and did not believe and was not informed by any attorney that I had a valid legal claim against Defendants." Id. at ¶ 3. Arnold states that it was not until filing her complaint on July 7, 2005 (more than two years after filing bankruptcy) that "I believed I may have a valid claim against Defendants." Id. at ¶ 4.[3] Further, she states that "I was never informed by my bankruptcy attorney or any other counsel or person of any need to update my bankruptcy filings as to whether claims were in fact, asserted after the filing of the bankruptcy petition; nor was I aware of any duty

---

[3]Defendants assert that a conflict between this statement and her testimony that she first approached attorney Elle Sullivant about potential allegations of race discrimination and harassment against ADT in the summer of 2002. Inquiring about potential claims and knowing that the claims are valid are two different things. In any event, the purported conflict is not a material one.

4

to supplement my bankruptcy petition or bankruptcy filings once claims arose or were asserted." Id. at ¶ 5.[4]

## II. Legal Standards

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467 (1962). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and it must give that party the benefit of all reasonable inferences to be drawn from the evidence. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999).

## III. Analysis

Defendants assert that Arnold's claims are barred on judicial estoppel grounds, in that she took inconsistent positions in this court and the Bankruptcy Court as to the existence of employment discrimination claims against them. "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a

---

[4]Arnold also stated that "[a]t the time of my disclosure [of the bankruptcy case] to my current Attorney, I had already been discharged from bankruptcy." Id. at ¶ 6. The court agrees with defendants that this statement is inaccurate: Arnold's attorney disclosed the bankruptcy filing in a March 2006 document production, but Arnold's bankruptcy discharge did not occur until August 2006. The conflict is insignificant, though, because Arnold was not handling the bankruptcy case, and Arnold claims she was never informed that she needed to disclose the discrimination case to the Bankruptcy Court by way of supplemental or amended filings.

5

previous proceeding." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice § 134.30 (3d ed. 2000)). Judicial estoppel is "an equitable doctrine invoked by the court at its discretion." Id. at 750. The purpose of judicial estoppel is to protect the integrity of the judicial process "by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749. Factors to consider include (1) whether the party's later position was "clearly inconsistent" with its earlier position; (2) whether the party "has succeeded in persuading the court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750-51. The Supreme Court noted that these three factors, while not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," aid a court in determining whether to apply the doctrine. Id. at 751. In the recent case of Stallings v. Hussmann Corp., involving judicial estoppel relating to omissions in bankruptcy filings, the Eighth Circuit utilized the three factors from New Hampshire, as well as the consideration of inadvertence as advanced in New Hampshire and discussed later in this opinion. 447 F.3d 1041, 1047-49 (8th Cir. 2006).

A debtor in bankruptcy has a duty to disclose all legal interests in property in his bankruptcy petition and filings. 11 U.S.C. § 521(a). The bankruptcy estate includes all legal or equitable interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a). Causes of action for monetary damages are property of the bankruptcy estate. United States ex rel. Gebert v. Transport Admin. Servs., 260 F.3d 909, 913 (8th Cir. 2001). Moreover, "a debtor's failure to list

6

a claim in the 'mandatory bankruptcy filings is tantamount to a representation that no such claim existed.'" Stallings, 447 F.3d at 1048 (citation omitted). "In the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." Id. at 1047.

Arnold's brief opposition essentially claims that not disclosing this discrimination case to the Bankruptcy Court was inadvertent and unintentional because she had not been informed of any duty to supplement her bankruptcy filings. As to the first judicial estoppel factor, Arnold does not dispute that her respective positions in the Bankruptcy Court and in this court are "clearly inconsistent." Arnold filed this suit on July 7, 2005, two years into her Chapter 13 Bankruptcy. But she never amended her bankruptcy filings to disclose the existence of this discrimination case. So, in this court, Arnold is pursuing claims against defendants that she represented (by failing to make amended filings) did not exist to the Bankruptcy Court. See Stallings, 447 F.3d at 1049 (finding the plaintiff's position in pursuing FMLA lawsuit was "clearly inconsistent" when he failed to amend existing Chapter 13 bankruptcy schedules to reflect that subsequently filed lawsuit).

With regard to the second factor, the court must determine if Arnold succeeded in persuading the Bankruptcy Court to accept her position that she had no claims against defendants. Here, defendants argue that the Bankruptcy Court's discharge was based on plaintiff's representations to that court in her filings and constituted acceptance or adoption of her position. The court disagrees. The present case is factually similar to a recent case decided by this court, Young v. Time Warner Cable Capital, L.P., et al., No. 04-0651-CV-W-HFS, 2006 WL 2927569 (W.D. Mo. Oct. 12, 2006); as well as a Northern District of California case, Donato v. Metropolitan Life Insurance Co., 230 B.R. 418 (N.D. Cal. 1999). In Young and Donato, both of which involved omitted discrimination

7

claims, the plaintiffs' Chapter 13 plans called for repayment of 100 percent of the debts owed. The same is true in the present case. In Young, this court found that "the Bankruptcy Court likely did not rely to any measurable extent on plaintiff's omission of this lawsuit as an asset, given that the Chapter 13 plan it confirmed required plaintiff to repay 100 percent of all of his secured and unsecured debts." Young, 2006 WL 2927569, at *4.

Young relied on Donato, in which the district court found that the adoption factor was not satisfied because the Chapter 13 plan required 100 percent repayment. Donato, 230 B.R. at 423. The Donato judge reasoned that, at the hearing confirming the plaintiff's Chapter 13 plan, "Donato's failure to disclose her lawsuit against MetLife could not have been relied upon by the bankruptcy court, the bankruptcy trustee or Donato's creditors because even if she had disclosed it, no creditor would have been able to receive more than 100 percent of its claim." Id. The court acknowledges that Young and Donato differ slightly from this case – those debtors' Chapter 13 plans had been confirmed but not discharged at the time of the judicial estoppel motions. This distinction does not change the analysis here, though, given that the Bankruptcy Court discharged Arnold "from the debts and liabilities provided for by the Chapter 13 plan" only after the Plan was paid off 100 percent, as verified by the Trustee's Final Report and Account. Viewing the facts in the light most favorable to Arnold, this court is not convinced that the Bankruptcy Court relied on plaintiff's omission (via failure to amend) when it confirmed and later discharged Arnold's Chapter 13 plan. Therefore, the adoption factor is not satisfied.

As to the third factor, the court must determine if Arnold would derive an unfair advantage or impose an unfair detriment on defendants if not estopped. In short, the answer is no. In a Chapter 7 bankruptcy, a debtor may have a significant portion of his or her debts wiped out through a no-

8

asset discharge. Omission of a discrimination claim in the Chapter 7 context could certainly create a windfall to a debtor. See Henderson v. ADT Security Services, Inc., No. 03-0133-CV-W-HFS, slip op. at 8-9 (W.D. Mo. July 7, 2005) ("If plaintiff were to prevail in the present suit, she could keep all monetary damages for herself and none would go the bankruptcy estate or her creditors because the bankruptcy court has already discharged her debts."). Here, by contrast, Arnold's Chapter 13 plan required her to pay 100 percent of all of her debts owed to secured and unsecured creditors who filed claims that were allowed, and she fulfilled that requirement. So unlike a Chapter 7 debtor with a no-asset discharge, Arnold's nondisclosure of this lawsuit did not result in getting any of her debts reduced or discharged by the Bankruptcy Court. As in Donato, even if Arnold had timely amended her filings to list the lawsuit as an asset, her creditors were not entitled to received any more than the 100 percent repayment that they ultimately received under the Chapter 13 Plan. In addition, defendants have not demonstrated that any unfair detriment was imposed upon them due to Arnold's nondisclosure, as they were not among her creditors. See Stallings, 447 F.3d at 1051 (noting that the plaintiff would not derive an unfair advantage as the defendants were not his creditors and distinguishing cases in which the plaintiffs "brought claims against creditors that were involved in their bankruptcy, thereby seeking to gain a substantial advantage over them after their debts were discharged"). Thus, the court finds that the third judicial estoppel factor has not been met.

Even if defendants could establish that all three judicial estoppel factors had been satisfied, the court must still determine whether Arnold's failure to amend her bankruptcy filings to reflect the lawsuit against defendants was inadvertent or a mistake, such that judicial estoppel should not be applied. "We do not question that it may be appropriate to resist application of judicial estoppel

9

'when a party's prior position was based on inadvertence or mistake.'" New Hampshire, 532 U.S. at 753 (citation omitted).  As the Stallings court explained, "judicial estoppel does not apply when a debtor's 'prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court.'"  Stallings, 447 F.3d at 1049 (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996)).  A rule that the requisite intent for judicial estoppel could be inferred from the mere fact of nondisclosure in a bankruptcy proceeding would "unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies." Stallings, 447 F.3d at 1049 (citation omitted).  Thus, "[c]areless or inadvertent disclosures are not the equivalent of deliberate manipulation," so courts "should only apply the doctrine as an extraordinary remedy when a party's inconsistent behavior will result in a miscarriage of justice." Stallings, 447 F.3d at 1049.[5]

Arnold asserts that her failure to disclose this lawsuit to the Bankruptcy Court was inadvertent and unintentional.  She contends that her bankruptcy attorney did not explain to her what "contingent and unliquidated claims" meant.  Moreover, she asserts that at the time she filed for bankruptcy protection, she did not know if she had any valid claims against defendants (and in fact did not file suit for more than two years).  Arnold also asserts that she "was never informed by my bankruptcy attorney or any other counsel or person of any need to update my bankruptcy filings" or any duty to supplement her filings if claims later arose.  It is worth noting that defendants learned of Arnold's bankruptcy when she supplied her bankruptcy petition in response to their request for

---

[5]The court acknowledges that the Eighth Circuit's stance on inadvertence is somewhat more forgiving than that of some other Circuits.  But even under a more demanding standard, the result would be the same.

10

production of documents. If Arnold had truly intended to deceive this court, she would have kept quiet. Contrary to defendants' assertion, this case is not like the Henderson case on the question of inadvertence. In Henderson, a Chapter 7 case, the court's finding of intentional omission rested largely on evidence of the plaintiff's prior attempt to conceal another discrimination lawsuit (and cash settlement) from the Bankruptcy Court; this evidence went along way toward establishing a pattern of intentional nondisclosure. Henderson, slip op. at 10. Even after the Trustee independently discovered the settlement, the plaintiff repeatedly ignored his letters asking her to account for the proceeds. Id. In Arnold's case, there is no hint of a scheme to defraud the courts or achieve some windfall through intentional omission. Rather, the court finds that Arnold's mistaken failure to amend constitutes the inadvertent mistake of a layperson. And while ignorance of the legal duty to supplement one's bankruptcy filings does not excuse the failure to do so, there is no evidence of the type of deliberate manipulation that warrants judicial estoppel. As a result, the court finds that Arnold's failure to disclose this lawsuit to the Bankruptcy Court was inadvertent.

In sum, the court finds that only one of the New Hampshire factors has been satisfied and that, in any event, Arnold's nondisclosure of this suit was inadvertent. As this court explained in Young, "Because facts in this case do not evidence a deliberate attempt to manipulate the courts or a 'miscarriage of justice,'" the court will not invoke the extraordinary remedy of judicial estoppel. Young, 2006 WL 2927569, at *6.

**IV.     Conclusion**

For the foregoing reasons, it is hereby

ORDERED that defendants' motion for summary judgment (ECF doc. 40) is DENIED.

           /s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 27, 2007

Kansas City, Missouri